UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FOUNDATION FOR FAIR CONTRACTING – C.H.O.I.C.E.**<br>5829 Allentown Road<br>Camp Springs, MD 20746<br><br>**Plaintiff**<br><br>v.<br><br>**NATIONAL AERONAUTICS AND SPACE ADMINISTRATION**<br>300 E Street SW<br>Washington, DC 20546<br><br>**Defendant.** | **Civ. No._____** |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1. Plaintiff Foundation for Fair Contracting – C.H.O.I.C.E. ("FFC") brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, against Defendant National Aeronautics and Space Administration ("NASA"), seeking the immediate release of information requested by the FFC and improperly withheld by NASA under FOIA Exemptions 4 and 6.

**Jurisdiction and Venue**

2. This Court has both subject matter jurisdiction and personal jurisdiction pursuant to 5 U.S.C. § 552(a)(4)(B).

3. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706.

4. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**The Parties**

5.      Plaintiff FFC is a Maryland-based non-profit organization dedicated to protecting workers on government construction projects from substandard wages and working conditions. To this end, the FFC monitors public construction projects for compliance with federal, state, and local prevailing wage laws, such as the Davis-Bacon Act ("DBA"), 40 U.S.C. § 3141 *et seq*. The FFC monitors these projects by, among other things, making FOIA requests to federal, state, and local contracting agencies for certified payroll reports submitted to the agencies by contractors performing work on public construction projects.

6.      Defendant NASA is an independent executive agency of the United States government and is an agency within the meaning of 5 U.S.C. § 552(f)(1). NASA's headquarters are in Washington, D.C.

**Statutory Framework**

7.      The Freedom of Information Act requires agencies of the federal government, upon request, to release information to the public, unless the agency demonstrates that one of the nine enumerated statutory exemptions applies. 5 U.S.C. § 552(a) & (b).

8.      Exemption 4 of the FOIA allows an agency to withhold "trade secrets and commercial or financial information" obtained by an agency from a submitter, where said information is "privileged or confidential." *Id*. § 552(b)(4).

9.      Exemption 6 of the FOIA permits federal agencies to withhold information about individuals contained in "personal and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy." *Id*. § 552(b)(6).

10.     The DBA is a minimum wage law that protects the wages and benefits of construction workers by prohibiting contractors and subcontractors on public construction projects from paying

workers less than the locally prevailing wage. By upholding locally prevailing wages for construction workers on public projects, the Act preserves area labor standards for the benefit of all workers in the construction industry.

11. Among other things, the DBA requires that a provision stating the prevailing wage rate to be paid various classes of laborers and mechanics must be incorporated in each contract awarded by the federal government or the District of Columbia in excess of $2,000 for the construction, alteration, or repair of public buildings or public works. 40 U.S.C. §3142(a).

12. The DBA is enforced in part through the Copeland Anti-Kickback Act, 40 U.S.C. § 3145(a), which requires federal contractors to submit weekly certified payroll reports to the government to ensure compliance with prevailing wage requirements and other federal labor standards.

13. Certified payroll reports typically contain the following categories of information: (1) the names, home addresses and social security numbers of the employees covered by the DBA; (2) each employee's job classification; (3) the hours worked by each employee each day; (4) the total hours worked each week; (5) the rate of pay, including the fringe benefit rate; (6) the gross amount earned by employees each week; (7) itemized payroll deductions, including mandatory and discretionary deductions; and (8) the net weekly wages of covered employees.

14. Among other things, federal contracting agencies, such as NASA, are responsible for obtaining certified payroll reports from government contractors and subcontractors on a weekly basis, and reviewing them to ensure they have met DBA labor standards requirements. *See, e.g.*, FAR 22.406-1(a)(2), 22.406-6, 22.406-7(b)(3); 29 C.F.R. §5.6(a)(2)-(3), §5.5(a)(3)(ii)(A).

**Facts**

15. On August 31, 2015, the FFC submitted a FOIA request to NASA.

16. The FFC's FOIA request sought copies of certified payroll reports submitted by twelve contractors and subcontractors performing construction work on NASA's Flight Projects Building at the Goddard Space Flight Center ("GSFC") in Greenbelt, Maryland for the period from January 1, 2015, to August 1, 2015. The Flight Projects Building is a $31 million government construction project subject to the labor standards requirements of the DBA.

17. On March 23, 2016, the FFC revised its request by seeking only those certified payroll reports for the employees of SEMI USA ("SEMI") and Tobar Construction ("Tobar") for the period from January 1, 2015, to August 1, 2015.

18. SEMI – the general contractor for the Flight Projects Building – self-performed various portions of the contract, and Tobar was one of the many subcontractors SEMI hired to perform work on the project.

19. On May 19, 2016, NASA stated it would release the certified payroll reports for Tobar, but that pursuant to FOIA Exemption 6, the agency would redact employee names, home addresses, social security numbers, and certain itemized payroll deductions. NASA offered to disclose all other financial data in Tobar's certified payroll reports.

20. NASA stated it would withhold SEMI's certified payroll reports "in their entirety" pursuant to FOIA Exemptions 6 and 4, although NASA did not specify which portions of SEMI's payroll reports were withheld under Exemption 4 and which were withheld under Exemption 6.

21. NASA further stated that "actual wages paid to SEMI's employees, as well as payroll information that would allow such wages to be derived" are protected under Exemption 4 because disclosure "could cause substantial harm to the competitive position of SEMI." NASA did not explain *how* the disclosure of actual wages paid to SEMI employees might harm SEMI's competitive position.

22. NASA also suggested that the competitive harm to SEMI arises from disclosure of only those wage rates that are not already available to the public, i.e. those wages that "exceed the publically available Davis-Bacon rates…" Instead of simply withholding payroll data for those SEMI employees whose wages "exceed the publically available Davis-Bacon rates," NASA, without explanation, withheld SEMI's payroll reports "in their entirety."

23. To gain insight into NASA's initial determination, the FFC submitted another FOIA request on May 27, 2016, requesting the comments and any other documents submitted by SEMI to NASA, concerning the agency's disclosure of the certified payroll reports that the FFC requested on March 23, 2016.

24. On June 9, 2016, NASA issued a revised initial determination regarding the FFC's March 23, 2016, FOIA request for the certified payroll reports of SEMI and Tobar.

25. With regard to both Tobar and SEMI's certified payroll reports, NASA explained it would continue to withhold employee names, addresses, social security numbers, and certain itemized payroll deductions under Exemption 6.

26. With regard to SEMI's records, NASA agreed to disclose the non-wage information which it had initially withheld – i.e., the number of hours worked and employee job classifications.

27. NASA also slightly revised its position on Exemption 4, stating that "the degree to which the actual [pay] rates" contained in SEMI's certified payroll reports "exceed the publically available Davis-Bacon rates[,] is information that could cause substantial harm to the competitive position of SEMI, by allowing competitors insight into SEMI's actual labor costs which would permit them to underbid SEMI in future projects."

28. On June 23, 2016, in response to the FFC's second FOIA request, NASA produced the comments submitted by SEMI to NASA, objecting to the agency's disclosure of SEMI's certified payroll reports.

29. NASA's original and revised initial determinations only adopted SEMI's argument that information about how much SEMI actually pays its employees may be used by competitors to undercut SEMI in bidding on future projects.

30. NASA released Tobar and SEMI's redacted certified payroll reports on July 11, 2016.

31. With regard to Tobar's records, NASA relied on Exemption 6 to withhold employee names, addresses, social security numbers, certain non-mandatory payroll deductions, and net weekly wages.

32. With regard to SEMI's records, NASA similarly relied on Exemption 6 to withhold employee names, addresses and social security numbers. NASA relied on Exemption 4 to withhold rates of pay, gross amounts earned by employees, and FICA taxes. Lastly, NASA relied on *both* Exemptions 4 and 6 to withhold all other itemized payroll deductions, total deduction amounts, and net weekly wages.

33. The FFC filed a timely administrative appeal with the agency on August 10, 2016.

34. The FFC did not challenge the redaction of employee names, addresses, social security numbers, or any other personally identifying information contained in any of the certified payroll reports.

35. With regard to Tobar's certified payroll reports, the FFC challenged NASA's redaction of non-mandatory payroll deductions, and net weekly wages of employees under Exemption 6. The FFC argued that since all personally identifying information would be redacted from the Tobar

records, the remaining financial data would be anonymous and therefore would not implicate any personal privacy interest cognizable under FOIA.

36. Similarly, with regard to SEMI's certified payroll reports, the FFC challenged all redactions under Exemption 6, except for employee names, addresses, social security numbers, and any other personally identifying information.

37. In addition, the FFC challenged all of the agency's redactions under Exemption 4, because NASA had failed to show that disclosure of the requested payroll information would likely cause substantial harm to SEMI's competitive position.

38. The FFC retained Kevin C. Duncan, an economics professor at Colorado State University, to assess the agency's argument that certified payroll reports are protected from disclosure under FOIA Exemption 4, because the release of said records may cause "competitive harm" to the submitting contractor, SEMI.

39. Professor Duncan concluded that third parties cannot use the information from SEMI's certified payroll reports to estimate and undercut SEMI's bids in future contracts.

40. Professor Duncan prepared a detailed declaration in support of the FFC's administrative appeal, setting forth various economic arguments in support of his conclusion that a competitor cannot use SEMI's certified payroll reports to undercut SEMI on future projects.

41. Three construction contractors and subcontractors with decades of experience in public construction and bidding on federal construction contracts also submitted declarations confirming Professor Duncan's assessment that a competitor cannot use the certified payroll reports from one project to gain a competitive advantage on a subsequent project.

42. On October 24, 2016, NASA issued a final determination responding to the FFC's August 10, 2016, administrative appeal.

43. With regard to the Exemption 6 redactions, NASA reversed its revised initial determination, but only as to the Tobar records.  NASA agreed with the FFC that the redaction of employee names, addresses and social security numbers, rendered the remaining information in the payroll reports anonymous and, therefore, did not implicate any privacy interests under Exemption 6. The agency released the revised redacted records for Tobar on December 9, 2016.

44. NASA did not agree to lift the Exemption 6 redactions from the SEMI records.

45. With regard to the Exemption 4 redactions made to information contained in the SEMI records, NASA affirmed its revised initial determination, without addressing or rebutting any of the economic arguments presented in the FFC's administrative appeal.

46. Like NASA's revised initial determination, the final determination stated that "the degree to which the actual [wage] rates exceed the publicly available Davis-Bacon rates is information that could cause substantial competitive harm to SEMI's competitive position . . . ." NASA did not explain its refusal to disclose wage rate information pertaining to those employees whose wages *do not* "exceed the publically available Davis-Bacon rates."

47. NASA's final determination further stated that "[a] likelihood of substantial competitive harm may be found if disclosure of the information would allow competitors to estimate and undercut a firm's bid on a future project." NASA did not explain *how* knowledge of "actual [wage] rates" and "actual labor costs" will allow competitors to estimate and undercut SEMI on future projects.

**Cause of Action:**
**Violation of the FOIA for Failure to Release**
**Information Sought by Plaintiff in its March 23, 2016 FOIA Request**

48. The FFC repeats and realleges paragraphs 1-47.

8

49. The FFC has exhausted the applicable administrative remedies with respect to its March 23, 2016, FOIA request.

50. NASA has wrongfully applied Exemptions 4 and 6 of the FOIA to withhold certain information contained in SEMI's certified payroll reports.

51. The FFC is entitled to injunctive relief compelling the disclosure of the requested information.

## Bench Trial Demand

The FFC hereby requests a bench trial.

## Requested Relief

The FFC requests the following relief:

a. A declaratory judgment that NASA's decision to apply Exemptions 4 and 6 to withhold the requested information contained in SEMI USA's certified payroll reports violates the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*;

b. An order compelling NASA to immediately and expeditiously process the FFC's March 23, 2016, FOIA request and to release the requested certified payroll reports of SEMI USA with all Exemption 4 and 6 redactions lifted, with the exception of personally identifying information such as employee names, addresses and social security numbers;

c. Litigation costs, expenses and attorneys' fees to the fullest extent permitted by law, including 5 U.S.C. § 552(a)(4)(E); and

d. Such other relief as this Court deems just and proper.

Dated: February 28, 2017

/s/Esmeralda Aguilar_____
Richard M. Resnick, (Bar No. 92552)
Lucas R. Aubrey (Bar No. 982849)
Esmeralda Aguilar (Bar No. 1003600)
Sherman, Dunn, Cohen, Leifer & Yellig, P.C.
900 Seventh Street, N.W.
Suite 1000
Washington, D.C. 20001
Telephone No. (202) 785-9300
Fax No. (202) 775-1950
E-Mail: resnick@shermandunn.com
E-Mail: aubrey@shermandunn.com
E-Mail: aguilar@shermandunn.com

*Attorneys for Plaintiff FFC*